McGREGOR W. SCOTT
United States Attorney
SHELLEY D. WEGER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED

AUG 08 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DARIUSH NIKNIA, and RICHARD LANT, <br><br> Defendants. | CASE NO. 2:19-CR-131-MCE <br><br> 50 U.S.C. § 1705(a), (c), and 31 C.F.R. § 560.204 – Conspiracy to Export to Embargoed Country; 50 U.S.C. § 1705(a), (c), and 31 C.F.R. § 560.206 – Prohibited Trade-Related Transactions With Iran (2 counts); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

# I N D I C T M E N T

### Introductory Allegation

At all times relevant to this indictment:

1. Defendant DARIUSH NIKNIA, was a citizen of the United States, who resided in and operated a business named Euro Auto Sales in Elk Grove, California.

2. Defendant RICHARD ("RICK") LANT was a citizen of the United States, who resided in and conducted a business named R&L Ltd. in Las Vegas, Nevada.

3. Person 1 was a family member of RICK LANT, and assisted with RICK LANT's business.

### The Iran Trade Embargo

4. The International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701-1706, authorized the President of the United States ("the President") to impose

INDICTMENT

1

economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States when the President declared a national emergency with respect to that threat.

5. On March 15, 1995, the President issued Executive Order No. 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Executive Order No. 12957, as expanded and continued by Executive Orders 12959 and 13059, was in effect at all times relevant to this Indictment.

6. Executive Orders 12959 and 13059 (collectively, with Executive Order No. 12957, "Executive Orders"), imposed economic sanctions, including a trade embargo, on Iran. The Executive Orders prohibited, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran or the Government of Iran, of goods, technology, or services from the United States or by a United States person.

7. Pursuant to the Executive Orders, the United States Secretary of the Treasury promulgated the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560, implementing the sanctions imposed by the Executive Orders. Section 560.204 of the Iranian Transactions and Sanctions Regulations prohibited, in relevant part, the unauthorized exportation, reexportation, sale or supply, directly or indirectly, of any goods, technology, or services to Iran or the Government of Iran by a United States person, wherever located. Section 560.206 prohibited United States persons, wherever located, from engaging in any unauthorized transaction or dealing in or related to goods, technology, or services for exportation, reexportation, sale or supply, directly or indirectly, to Iran or the Government of Iran. For purposes of section 560.206, the term "transaction or dealing" includes, but is not limited to, purchasing, selling, transporting, swapping, brokering, approving, financing, or guaranteeing.

8. The Department of Treasury's Office of Foreign Assets Control administered the authorization and issuance of licenses for any transactions subject to the Iranian Transactions and Sanctions Regulations. With very limited exceptions, in the absence of a license, or other prior approval, it was illegal under IEEPA and the Iranian Transactions and Sanctions Regulations for a United States person to export, sell, or supply goods or services to Iran or the Government of Iran, or to

1  engage in any transaction or dealing in or related to the exportation, reexportation, sale, or supply, of
2  goods, technology, or services to Iran or the Government of Iran.
3      9.    Neither Defendant NIKNIA nor LANT, nor the companies owned by Defendant NIKNIA
4  nor LANT applied for, received, or possessed a license or authorization from the Office of Foreign
5  Assets Control to export, sell, or supply any goods, technology, or services, directly or indirectly, to Iran
6  or the Government of Iran, or to engage in a transaction or dealing in or related to the export, sale or
7  supply of goods, technology, or services, directly or indirectly, to Iran and the Government of Iran.
8  COUNT ONE: [50 U.S.C. § 1705(a), (c) and 31 C.F.R. § 560.204 – Conspiracy to Violate Iran Trade
9                  Embargo]

10      The Grand Jury Charges: THAT
11                  DARIUSH NIKNIA, and
                RICHARD LANT,
12  defendants herein, beginning on or about May 1, 2015, and continuing through on or about October 20,
13  2015, in the Eastern District of California, and elsewhere, did knowingly and willfully conspire with
14  each other, and with other persons known and unknown to the Grand Jury, to export, sell, and supply
15  Russian-made tank helmets from Russia, directly and indirectly, to Iran and the Government of Iran, in
16  violation of the embargo imposed upon that country by the United States without having first obtained
17  the required licenses and authorizations from the Office of Foreign Assets Control, United States
18  Department of the Treasury, in violation of Title 31, Code of Federal Regulations, Part 560.204.
19                                        Overt Acts
20      As part, and in furtherance, of the conspiracy, the following overt acts, among others, were
21  committed within the Eastern District of California, and elsewhere:
22      1.    On or about May 1, 2015, NIKNIA received an email, written in Farsi, regarding the
23  purchase of 500 tank helmets.
24      2.    On or about May 13, 2015, NIKNIA contacted LANT via email and asked to purchase
25  500 Russian-made tank helmets for "pick up location Tehran [Iran],2nd chose Russia, 33rd Turkey."
26      3.    On or about May 14, 2015, LANT informed NIKNIA via email that LANT had
27  forwarded NIKNIA's order to LANT's "friends in Russia to see what the best deal we can get."
28

INDICTMENT                                   3

1     4.      On or about May 21, 2015, LANT told NIKNIA via email that he "[f]inally found a shipper" and asked for the "direct shipping address."

    5.      On or about May 26, 2015, NIKNIA emailed LANT the name of the recipient of the helmets and the mailing address in Tehran, Iran.

    6.      On or about May 31, 2015, NIKNIA paid LANT $75 via PayPal to have a sample tank helmet shipped from Russia to NIKNIA's customer in Iran.

    7.      On or about June 1, 2015, LANT informed NIKNIA via email that "[t]he address in Iran has to be either in Latin or Cirillic, Russian post will not accept any other!"

    8.      On or about June 1, 2015, NIKNIA emailed LANT a mailing address in Tehran, Iran, written in English.

    9.      On or about June 15, 2015, LANT told NIKNIA via email that when LANT's Russian contact "went to ship the helmet to Tehran they wouldn't allow it to be shipped." The email further stated, "I guess Russia has accepted the US sanctions and has prohibited individuals from shipping there."

    10.      On or about June 15, 2015, in response to LANT's June 15 email, NIKNIA asked LANT via email, "could he tray to give some tip or find connection in post office so make it happens."

    11.      On or about July 1, 2015, LANT forwarded NIKNIA an email from LANT's "associate in Moscow" that stated, a "person who makes deals with customs and shipment says he can send anything! . . . Even in Tehran, even in big amounts, even military stuff. . . . I bought a helmet . . . . I am ready to send it by the small package to the Tehran address and to look how it will come through."

    12.      On or about July 26, 2015, NIKNIA's customer told NIKNIA via email that he/she received the package sent from Russia, but that the helmet sample was not the one they ordered and they would not approve the product that was sent.

    13.      On or about July 26, 2015, NIKNIA emailed LANT and stated, "They got the sample but it's the wrong one."

    14.      On or about August 1, 2015, NIKNIA forwarded pictures he received from his customer to LANT and stated: "I forward the pics was send it to me and I forward it to you so you can see the difference, the one they want isn't the round one.they send the round one."

INDICTMENT      4

15. On or about August 2, 2015, NIKNIA asked LANT via email, "Any news on the right sample, could they send the right one?"

16. On or about August 23, 2015, NIKNIA told LANT via email, "I need one sample to be send back to same address with the right type of helmet, please let me know so I deposit money to your paypal for one right sample."

17. On or about August 30, 2015, NIKNIA transferred $78 to LANT's PayPal account.

18. On or about September 11, 2015, NIKNIA received an email from LANT's email address. The email was signed by Person 1. The email stated, "[s]he sent the helmet" and provided a tracking number.

19. On or about September 21, 2015, NIKNIA emailed Person 1, via LANT's email address, and stated, "It[']s in Iran customs."

20. On or about September 30, 2015, NIKNIA again emailed Person 1, via LANT's email address, and stated that the "Sample was app ''roved. found is availabel will send you each week for 50 units and you;ll mail it 50 unit each time. . . . please me yourself ready for 500 unites must be same as the sample i have funds available . . . ."

21. On or about October 8, 2015, NIKNIA wrote to Person 1 via LANT's email and stated, "Configuration is for tanker T72S."

22. On or about October 9, 2015, NIKNIA received LANT's routing and bank account information via an email from LANT's email account.

23. On or about October 9, 2015, Person 1 emailed NIKNIA from LANT's email account informing NIKNIA that he "got notification that the seller has the ability to get the first 50 for now. I will need the funds as they won't reserve the hats until we pay them. Please make the check payable to [LANT] or we can give bank acct info for wire of $3500. They will then need a few days to get them and then to ship them to Tehran."

24. On or about October 9, 2015, NIKNIA received an email from LANT's email account containing LANT's bank account number and the account routing number.

25. On or about October 9, 2015, NIKNIA made a $3,500 payment to LANT's bank account.

26. On or about October 15, 2015, Person 1 forwarded NIKNIA an email from LANT's

INDICTMENT 5

1  "associate in Moscow" that stated, "the sellers say this seems to be impossible to get such big quantities
2  of helmets . . . . They say now they have 5 helmets, and in the best case they may slowly get 100 to the
3  New Year, one by one!! I guess the difference with hats is –helmets is an item that can not be produced
4  or sold such as us hanks hats, it's prohibited to buy or sell big amounts. The guys also say it's
5  dangerous and outlaw business to provide thousands of modern military stuff to countries that may use
6  this in terroristic or any war ways." At the conclusion of the email, Person 1 states, "Send me your
7  address and I will return the $3500. . . . Sorry, but no one seems to have a way to proceed with these
8  helmets."

9       27.    NIKNIA responded via an email addressed to LANT, and stated: "Sorry to hear about
10  the bad news. do you have any other sorces like before from Ukrain?"

11       28.    In response, NIKNIA received an email from LANT's email address that stated, "It
12  seems they can do it but very slowly. My source before went out of business and it seems other sources
13  do not want to get involved. The guy said to my friend that he has 5 if we ship them as we get them it
14  would seem that would work. I don't know if that would work for your client though."

15       All in violation of Title 50, United States Code, Section 1705(a), (c), and Title 31, Code of
16  Federal Regulations, Part 560.204.

17  COUNT TWO: [50 U.S.C. § 1705(a), (c); 31 C.F.R. § 560.206 – Prohibited Trade-Related Transactions
                with Iran]
18
19       The Grand Jury further charges: T H A T
20              DARIUSH NIKNIA, and
                RICHARD LANT,
21  defendants herein, between on or about May 31, 2015, and continuing through on or about July 30,
22  2015, in the County of Sacramento, within the State and Eastern District of California, and elsewhere,
23  were United States persons, and did knowingly and willfully violate the embargo against Iran by
24  engaging in a transaction and dealing in and related to goods and services, specifically a tank helmet, for
25  sale and supply, directly and indirectly, to Iran and the Government of Iran, without first obtaining the
26  required authorization from the Department of the Treasury, Office of Foreign Asset Control in violation
27  of Title 50, United States Code, Section 1705(a), (c), and Title 31, Code of Federal Regulations, Part
28

INDICTMENT                              6

1  560.206 (the Iranian Transactions and Sanctions Regulations) and Title 18, United States Code, Section
2  2.

3  COUNT THREE: [50 U.S.C. § 1705(a), (c); 31 C.F.R. § 560.206 – Prohibited Trade-Related
                  Transactions with Iran]
4

5       The Grand Jury further charges: T H A T

6                                      DARIUSH NIKNIA,

7  defendant herein, between on or about August 1, 2015, and continuing through on or about October 15,
8  2015, in the County of Sacramento, within the State and Eastern District of California, and elsewhere,
9  was a United States person, and did knowingly and willfully violate the embargo against Iran by
10 engaging in a transaction and dealing in and related to goods and services, specifically a tank helmet, for
11 sale and supply, directly and indirectly, to Iran and the Government of Iran, without first obtaining the
12 required authorization from the Department of the Treasury, Office of Foreign Asset Control in violation
13 of Title 50, United States Code, Section 1705(a), (c), and Title 31, Code of Federal Regulations, Part
14 560.206 (the Iranian Transactions and Sanctions Regulations) and Title 18, United States Code, Section
15 2.

16 FORFEITURE ALLEGATION:  [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal
                                Forfeiture]
17

18      1.      Upon conviction of one or more of the offenses alleged in Counts One through Three of
19 this Indictment, defendants DARIUSH NIKNIA and RICHARD LANT shall forfeit to the United States,
20 pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which
21 constitutes or is derived from proceeds traceable to such violations, including but not limited to the
22 following:

23      a)      A sum of money equal to the amount of proceeds traceable to such offenses, for
24 which defendants are convicted.

25      2.      If any property subject to forfeiture, as a result of the offenses alleged in Counts One
26 through Three of this Indictment, for which defendants are convicted:

27      a)      cannot be located upon the exercise of due diligence;

28      b)      has been transferred or sold to, or deposited with, a third party;

INDICTMENT                                           7

      c)      has been placed beyond the jurisdiction of the court;

      d)      has been substantially diminished in value; or

      e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ **Signature on file w/AUSA**

_____
FOREPERSON

*[signature]*

McGREGOR W. SCOTT
United States Attorney

INDICTMENT

8

No. **2:19-CR-131-MCE**

---

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
vs.

**DARIUSH NIKNIA**
**RICHARD LANT**

---

## INDICTMENT

**VIOLATION(S):** 50 U.S.C. §1705(a), (c), and 31 C.F.R. § 560.204 – Conspiracy to Export to Embargoed Country; 50 U.S.C. § 1705(a), (c), and 31 C.F.R. § 560.206 – Prohibited Trade-Related Transactions with Iran (2 Counts); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

---

*A true bill,*   **/s/ Signature on file w/AUSA**

_____
*Foreman.*

*Filed in open court this* __8th__ *day*

*of* __August__, A.D. 20__19__

_____
*Clerk.*

Bail, $ __as to both Defendants__

**NO BAIL WARRANT**

GPO 863 525

### United States v. Dariush Niknia and Richard Lant
### Penalties for Indictment

**COUNT 1:**     **ALL DEFENDANTS**

VIOLATION:     50 U.S.C. § 1705 (a), (c), and 31 C.F.R. § 560.204 – Conspiracy to Export to Embargoed Country

PENALTIES:     Maximum of 20 years in prison; or
Fine of up to $1,000,000; or both fine and imprisonment
Supervised release up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory)

**COUNT 2:**     **ALL DEFENDANTS**

VIOLATION:     50 U.S.C. § 1705(a), (c), and 31 C.F.R. § 560.206 – Prohibited Trade-Related Transactions with Iran

PENALTIES:     Maximum of 20 years in prison; or
Fine of up to $1,000,000; or both fine and imprisonment
Supervised release up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory)

**COUNT 3:**     **DARIUSH NIKNIA**

VIOLATION:     50 U.S.C. §1705 (a), (c), and 31 C.F.R. § 560.206 – Prohibited Trade-Related Transactions with Iran

PENALTIES:     Maximum of 20 years in prison; or
Fine of up to $1,000,000; or both fine and imprisonment
Supervised release up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory)

**FORFEITURE ALLEGATION:   ALL DEFENDANTS**

VIOLATION:     18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES:     As stated in the charging document