PHILLIP A. TALBERT
United States Attorney
SHELLEY D. WEGER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-00131 KJM |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| RICHARD LANT, | |
| Defendant. | |

## I.  INTRODUCTION

**A.  Scope of Agreement.**

The Indictment in this case charges the defendant with violations of 50 U.S.C. § 1705(a), (c) and 31 C.F.R. § 560.204 – conspiracy to export to an embargoed country (Count One) and 50 U.S.C. § 1705(a), (c) and 31 C.F.R. § 560.206 – prohibited trade-related transaction with Iran (Count Two). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.  Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

concerning the criminal activities of defendant, including activities which may not have been charged in the Indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to Count One of the Indictment charging him with a violation of 50 U.S.C. § 1705(a), (c) and 31 C.F.R. § 560.204 – conspiracy to export to an embargoed country. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.   Fine.

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury

to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation.  The government retains the right to oppose the waiver of a fine.  If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

C. **Special Assessment.**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

D. **Violation of Plea Agreement by Defendant/Withdrawal of Plea.**

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice.  Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement.  The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be

U.S. v. RICHARD LANT - PLEA AGREEMENT            3

commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**E.     Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.D above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

**F.     Agreement to Cooperate.**

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government.  As used in this plea agreement, "cooperation" requires the defendant:  (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

### III.     THE GOVERNMENT'S OBLIGATIONS

**A.     Dismissals/Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining count in the pending Indictment.  The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.D (Violation of Plea Agreement by Defendant/Withdrawal of Plea), III.B.3 (Reduction of Sentence for Cooperation), VI.B (Stipulations Affecting Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B.     Recommendations.**

1.     Incarceration Range.

The government will recommend that the defendant be sentenced to a sentence no greater than the low end of the applicable guideline range as determined by the Court.

2.     Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G.

U.S. v. RICHARD LANT - PLEA AGREEMENT         5

§ 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

        3.        Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if he provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that he must comply with paragraph II.F and not violate this plea agreement as set forth in paragraph II.D herein. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands that the government may recommend a reduction in his sentence of less than 50% or no reduction at all; depending upon the level of assistance the government determines that the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion. In particular, the defendant agrees not to try to file a motion to withdraw his guilty plea based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following sentencing, the government may move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

    **C.**    **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also

U.S. v. RICHARD LANT - PLEA AGREEMENT      6

understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, Conspiracy to Export to an Embargoed Country in violation of 50 U.S.C. § 1705(a), (c):

1. First, beginning on approximately May 1, 2015 and continuing until approximately October 20, 2015, there was an agreement between two or more persons to commit a crime, namely a violation of 50 U.S.C. § 1705 and 31 C.F.R. § 560.204, a regulation issued pursuant to the International Emergency Economic Powers Act (IEEPA); and

2. The defendant entered into the agreement willfully, knowing of its objective and intending to help accomplish it.

The elements of a violation of 50 U.S.C. § 1705 and 31 C.F.R. § 560.204 are:

1. The defendant was a United States person, which is defined by regulation to include any United States citizen, any person in the United States, or any entity organized under the laws of the United States or any jurisdiction within the United States;

2. The defendant violated a license, order, or regulation issued pursuant to the IEEPA, to wit: 31 C.F.R. § 560.204, which prohibits the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran without having first obtained the requisite license from the U.S. Department of the Treasury, Office of Foreign Assets Control;

3. The defendant acted knowingly and willfully, that is, the defendant knew his conduct was unlawful.

The defendant fully understands the nature and elements of the crimes charged in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose is 20 years of incarceration, a fine of $1,000,000, a 3-year period of supervised release, and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B. Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take that range into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Stipulations Affecting Guideline Calculation.

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1.     Base Offense Level: 26 [U.S.S.G. § 2M5.1(a)(1) because national security controls were evaded]

2.     Role in the Offense Adjustment: -2 [U.S.S.G. § 3B1.2 because the defendant was a minor participant in the criminal activity]

3.     Adjusted Offense Level: 24

4.     Acceptance of Responsibility: See paragraph III.B.2 above

5.     Criminal History: The defendant's criminal history will be determined by the Court.

6.     Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), cross-references, or departures from the Sentencing Guidelines, except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1) or post-plea obstruction of justice (§ 3C1.1).

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The government reserves the right to oppose the defendant's argument and recommendation. However, the government will recommend a sentence that is no greater than the low end of the applicable guideline range as determined by the Court.

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.    Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to

appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which he is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.D herein.

C. **Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

D. **Impact of Plea on Defendant's Immigration Status.**

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes

are removable offenses, and the offense to which the defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

**A. Defense Counsel:**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 9/10/22

SHARI RUSK
Attorney for Defendant

**B. Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9-10-22

RICHARD LANT
Defendant

U.S. v. RICHARD LANT - PLEA AGREEMENT    11

C. **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:                                              PHILLIP A. TALBERT
                                                    United States Attorney

                                                    /s/ Shelley D. Weger
                                                    SHELLEY D. WEGER
                                                    Assistant United States Attorney

U.S. v. RICHARD LANT - PLEA AGREEMENT        12

EXHIBIT "A"

Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Beginning on or about May 13, 2015, and continuing through approximately October 20, 2015, DARIUSH NIKNIA (NIKNIA) and RICHARD LANT (LANT), among others, willfully participated in an agreement to export, sell, and supply 500 Russian tank helmets to NIKNIA's contact in Tehran, Iran, knowing that the export, sale, and supply of such helmets to Iran violated United States' law.

RICHARD LANT is and always has been a United States citizen. From at least 2011 through 2015, LANT resided in Las Vegas, Nevada, and operated a business named R&L Ltd from his home. R&L Ltd. was in the business of selling Russian art and collectibles, such as nesting dolls and helmets known as "ushankas," in online marketplaces such as eBay and Amazon.

DARIUSH NIKNIA, who resided in the Sacramento, California area, first contacted LANT in 2011. At that time, NIKNIA sent an email to LANT requesting to purchase 1500 helmets. Documentary evidence shows that in 2011, NIKNIA did in fact purchase helmets through LANT, which LANT arranged to have sent Turkey. For instance, in an email dated May 21, 2015, LANT reminded NIKNIA that when the helmets were shipped from Russia to Turkey the total price was $78.50 per helmet. In an email dated June 2, 2015, NIKNIA told LANT that with respect to the "last shipment 4 years ago they only received 294 rather than 300" helmets and that NIKNIA had to pay the loss. PayPal records indicate that in July 2011, NIKNIA made three separate payments of $7,850 each to LANT via PayPal, corroborating NIKNIA's statement that he purchase of 300 helmets.

Several years later, on May 13, 2015, NIKNIA replied to a 2011 email from LANT. NIKNIA told LANT that he needed 500 helmets of a specific size and type with a five-pin plug right away. NIKNIA requested that the helmets be delivered to Tehran, or alternatively to Russia or Turkey. LANT knew that in his experience people often collected these types of helmets as souvenirs, but also that the five-pin plug was necessary to enable a particular tank communication device. In a later email, sent in October 2015, NIKNIA specified that the helmets were to be configured for a Soviet/Russian-produced T-72S battle tank.

After receiving NIKNIA's May 13, 2015 request, LANT agreed to assist NIKNIA. In furtherance of the conspiracy, NIKNIA and LANT exchanged a series of emails between May 2015 and October 2015, wherein they discussed and planned the purchase and shipment of helmets to Iran. On occasion, Person 1, LANT's family member, assisted LANT with the helmet transaction using LANT's email account and at LANT's direction. Throughout these email exchanges, NIKNIA persisted in his request to purchase tank helmets and to have them quickly delivered to NIKNIA's contact in Tehran.

LANT initially responded to NIKNIA's request by informing NIKNIA that he had sent NIKNIA's request to his friends in Russia to see what type of deal they could get. A couple days later, NIKNIA asked LANT to "pursue" the helmets because he needed the merchandise. After discussion over several days about the price and the ability to purchase the helmets, on May 21, 2015, LANT informed NIKNIA that he had identified a shipper. LANT told NIKNIA that the first 100 helmets would cost $7,850, and instructed NIKNIA to pay by check because they needed keep the IRS out of it. LANT asked NIKNIA to provide the shipping address and stated he would transfer the money, and the

first 100 helmets would be shipped. NIKNIA replied that 100 helmets per shipment was good, in order to keep a low profile. NIKNIA further wrote that he would send the payment in two checks so LANT could deposit the checks on different days. On May 26, 2015, NIKNIA directed LANT to have the helmets shipped to an address in Tehran, Iran. The address, however, was written in a foreign language, and LANT informed NIKNIA that he needed the address in Latin or Cyrillic.

Before the first shipment occurred, NIKNIA informed LANT that NIKNIA's contact in Iran first wanted a sample helmet to ensure it would meet their needs. NIKNIA asked for LANT's bank account information in order to pay for the sample helmet. LANT requested NIKNIA pay by PayPal. PayPal records show NIKNIA paid LANT $75 via PayPal on May 31, 2015. NIKNIA requested that the helmet be sent as soon as possible with a "fast postal service." On June 1, 2015, NINKIA stated he would provide the shipping address in Latin, and later sent an address located in Tehran, Iran. On June 2, 2015, NIKNIA asked whether the helmet had been shipped and requested a tracking number. LANT responded that his seller left for vacation so the shipment was on hold.

In a June 15, 2015 email, LANT informed NIKNIA that when LANT's Russian contact went to ship the sample helmet, it could not be shipped because Russia had accepted the United States' sanctions against Iran and prohibited individuals from shipping there. LANT informed NIKNIA that the seller had never before tried to ship items to Iran so he did not know, and asked NIKNIA for an alternative address. In response, NIKNIA asked whether LANT's associate could give a "tip or find [a] connection in the post office to make it [the shipment] happens [sic]." LANT initially responded, "No one wants to go to prison!" and "P.S. Need another country to sent [sic] to . . ." NIKNIA followed up a few days later asking whether LANT's supplier could ship the helmet and how much more it would cost to ship through DHL. LANT stated his supplier was checking with cargo companies.

On July 1, 2015, LANT forwarded NIKNIA an email that LANT had received from his associate in Moscow. The email stated that LANT's associate had bought a helmet and was ready to ship it, because he/she found a person who makes deals with customs and shipment who said he/she could send anything, even military items, in large amounts, to Tehran. At the end of the email, LANT stated, "maybe if the Iran Nuc deal goes through the sanctions being lifted will help later."

On July 5, 2015, LANT sent NIKNIA a Russian Post tracking number so that NIKNIA's contact in Tehran could track the shipment. In subsequent emails, NIKNIA raised concerns about the length of time the shipment was taking, and the two discussed the tracking of the package. Then, on July 26, 2015, NIKNIA informed LANT that NIKNIA's contact in Tehran had received the helmet, but it was the wrong type because it had a round plug, instead of the rectangular five-pin plug NIKNIA requested. NIKNIA forwarded LANT pictures NIKNIA had received from his contact in Iran showing the helmet, the incorrect plug, and the shipping envelope. On July 30, 2015, NIKNIA wrote that the sanctions will be lifted in Iran, and when they are, there will be a vacuum and that companies will buy more stuff. NIKNIA stated that he would be in Iran soon, and would try to connect with key companies so that he and LANT could make lots of money together.

Email and PayPal records show that on August 30, 2015, NIKNIA made a second payment to LANT in the amount of $78 via PayPal and requested that a second sample helmet be shipped to Iran. On September 11, 2015, Person 1 sent NIKNIA a tracking number for the shipment via LANT's email account. On September 21, 2015, NIKNIA wrote that the helmet was in "Iran customs" and that he would pursue it. On September 30, 2015, NIKNIA sent an email stating that the second sample was approved as the correct type of helmet, and requested that additional helmets be sent 50 at a time. On

U.S. v. Richard Lant – Factual Basis For Plea        A-2

October 9, 2015, Person 1 informed NIKNIA that the seller had the ability to get the first 50 helmets and asked NIKNIA to send a $3,500 check made payable to Richard Lant or to pay that amount by wire transfer.  Bank records show that on that same day, NIKNIA made the requested payment, and the money was deposited into a bank account belonging to LANT and Person 1.

On October 15, 2015, Person 1, using LANT's email account, forwarded NIKNIA an email from LANT's Russian associate stating the seller could not obtain such a large quantity of helmets because buying and selling helmets in large quantities was prohibited, and further because it was illegal to send modern military items to countries that may use it in "terroristic or any war ways."  Person 1 told NIKNIA that NIKNIA's money would be refunded.

NIKNIA replied with an email addressed to LANT asking if LANT had any Ukrainian sources like before, referring to the 2011 transaction mentioned above.  LANT responded that his prior source went out of business and that other sources do not want to get involved.  LANT informed NIKNIA that his current source seemed to be able to acquire and ship the helmets, but just more slowly, a few at a time.

From approximately 1997 to the present, three United States Presidential Executive Orders issued pursuant to the International Emergency Economic Powers Act ("IEEPA") have been in effect.  The first of these executive orders declared that the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States and further declared a national emergency to deal with that threat.  Collectively, the executive orders imposed economic sanctions, including a trade embargo, on Iran.  The sanctions and embargo prohibited among other things, the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran.  The prohibitions were implemented by the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560, which were issued pursuant to IEEPA.  With very limited exceptions that do not include the tank helmets at issue in this case, it was illegal under IEEPA and the ITSR, specifically 31 C.F.R. § 560.204, for any United States person, wherever located, to export, sell, or supply, goods, technology, or services to Iran without having first received the requisite license from the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC").

A search of OFAC records showed that neither LANT, R&L Ltd, NIKNIA, nor NIKNIA's company, Euro Auto Sales, Inc., ever applied for or possessed the requisite license or authorization to export, sell, or supply goods, technologies, or services to Iran or the Government of Iran.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK**

U.S. v. Richard Lant – Factual Basis For Plea        A-3

LANT admitted to FBI agents that he agreed to facilitate the purchase of helmets for NIKNIA and that, as a result, two sample helmets were shipped to NIKNIA's contact in Tehran, Iran. LANT further admitted that at the time of the transactions both he and NIKNIA knew it was against United States' law to ship or supply the helmets to Iran.

I, RICHARD LANT, have read and carefully reviewed the above Exhibit A: Factual Basis for Plea with my attorney. As far as my own conduct and the conduct of which I am aware is concerned, the facts described above are true and I adopt this Factual Basis as my own true statement.

Dated: _____    _____
                                    RICHARD LANT
                                    Defendant

U.S. V. RICHARD LANT – FACTUAL BASIS FOR PLEA.    A-4